Bennie G. VOIGT et ux., Appellants,

v.

George E. CARLSON et ux., Appellees.

No. 10547.

Court of Civil Appeals of Texas.

Austin.

Jan. 29, 1958.

Rehearing Denied March 5, 1958.

E. M. Grimes, Taylor, William S. Lott, Georgetown, for appellants.

McClain & Stump, Georgetown, for appellees.

ARCHER, Chief Justice.

Habeas Corpus proceedings were instituted by Bennie G. Voigt and wife, Flora Irene Voigt, joined by guardian ad litem for Bennie G. Voigt, a person of unsound mind, against George E. Carlson and wife Edna Carlson, for the custody of Timothy Voigt, a boy 3 years old. Answer was made by the Carlsons by way of cross action seeking to declare that Timothy Voigt was a dependent or neglected child within the meaning of Article 2330, Vernon's Annotated Civil Statutes, and related statutes.

A trial was had and testimony heard by the Court and the child was declared to be a dependent and neglected child, without an estate in Texas, and destitute, homeless and abandoned and has no proper parental care from his natural parents and denied the application for a writ by habeas corpus and awarded the care, custody and control of the child to the Carlsons.

This appeal is from the order of the Court and is based on two points, and are that the Court erred in failing to award the care, custody and control of the child to its mother, and in finding that the child is dependent and neglected.

Timothy Voigt is the son of appellants, born November 3, 1954. The parents have moved a number of times and the father is a person of unsound mind having been declared such and drawing a disability award from the Government. This fact was unknown to Mrs. Voigt when she married Mr. Voigt.

Prior to February 4, 1957 Mrs. Voigt wrote to the Carlsons and asked them to raise the child and they replied that the only way they could do it was by legal adoption, and Mrs. Voigt in reply stated she would sign the papers—she was then living separate from Mr. Voigt—and would meet the Carlsons at Fountain, Florida, where Mr. Voigt was living in a trailer, their home, and sign the papers. The consent was given by Mr. and Mrs. Voigt for the Carlsons to adopt Timothy on February 4, 1957, and the Carlsons took the child home with them. About two months later Mr. Voigt came to the home of the Carlsons at Granger, Texas.

Mrs. Carlson testified that she could not have any children and that she and her husband wanted to adopt a child and that a letter was received from Mrs. Voigt in January, 1957, stating: "Edna, I would like for you to take Tim and raise him if you think it is best for him. I think it is, as he would then have a mama and daddy." In a second letter dated January 28, 1957, Mrs. Voigt stated that she was willing for the Carlsons to take the child and adopt him. Mrs. Carlson stated that they went to Florida and got the consent paper forms which they had taken with them signed and got the child.

Mr. Carlson testified on direct examination that he received a check for $10 from Mrs. Voigt and that the child was supposed to be getting $25 from the "Veterans, his share." The witness testified as to the trip to Florida and as to the signing

of the papers and that Mrs. Voigt voluntarily turned the child over to him, to be adopted. The witness testified as to the remark Mrs. Voigt made to Mr. Voigt that "Well, you are not the daddy to him in the first place, what difference does it make to you who takes him?" Mr. Carlson testified that he was curious and wrote Mrs. Voigt if her statement was true and she replied and said "No, I just done that to him to scare him sometimes." On cross examination the witness testified that Mrs. Voigt was arguing with her husband, who was trying to get her to come back and live with him, and was trying to hold back the child.

There is no question as to the character and suitability of the Carlsons to adopt a child. They are people of high character and of considerable property.

Mrs. Voigt, the mother of the child, testified that she was seeking to regain custody of her son, and had revoked the consent to adopt papers. The witness testified that she was a church member and was gainfully employed and able to care for the child; that she lived with a family of four adults, father, mother and two daughters, in a eight room house and had her own bedroom and the use of the house; that Mr. and Mrs. Cool, with whom she lives, are willing to have the child come into the home and would aid her.

Mrs. Voigt testified that she never really wanted to let her son go but under the circumstances she felt she had to; that she was sick and needed a female operation and had seen a doctor and had been advised that she might have a malignant growth; that she has since had the operation and has been advised by a doctor that she is in good physical condition; that she had been working overtime.

The witness testified that her husband Bennie G. Voigt is in a Veterans Hospital in New Jersey; that she has been getting $100 and will get $150 per month; that she does not know how much of this is for Timothy; that the guardian, John L.

Moravely, lives in Spring Valley, N. Y., and is in charge.

The witness detailed her marriage to Mr. Voigt in May, 1952, and learned in December, 1952, that Mr. Voigt had been adjudged a person of unsound mind; that she is not seeking a divorce and would live with her husband if he is ever restored to his right mind and would wait on him at any time if he became physically unable to care for himself; that she visits her husband regularly; that she is in a position to care for her son and loves him and wants him back.

The witness testified that she felt no animosity toward the Carlsons. Mrs. Carlson is a sister of Mr. Voigt.

As in most custody proceedings there is a pathetic phase in this case. The father is a service-connected person declared to be of unsound mind, in and out of the Veterans Hospital and is 15 years older than Mrs. Voigt. As has been stated Mrs. Voigt being ill and fearing that the cause of her illness might be malignant contacted her husband's sister, Mrs. Carlson, about taking her three year old son. The Carlsons were unwilling to take the child to raise except through legal adoption. Mrs. Voigt agreed to such, and consent papers were executed by her and Mr. Voigt and the child given to the Carlsons.

Within four months Mr. and Mrs. Voigt by written instruments revoked the consent to adopt which they had given Mr. and Mrs. Carlson.

This proceeding was filed June 18, 1957, and the judgment above noted was rendered by the Court on July 18, 1957.

We do not believe there is any evidence in the record as to the unsuitableness of Mrs. Voigt, the mother, to have her child and the Trial Court made no finding to such effect, and we believe that as a matter of law and fact that she is entitled to the care and custody of her son, and this, regardless of the apparent ability of Mr. and Mrs. Carlson to furnish the child with

more of the material things of life, and indeed a good Christian home. There can be no factual finding that the child is a dependent and neglected child within the meaning of Article 2330, V.A.C.S.

The Trial Court erred in refusing the natural parents the custody of their child and in declaring it to be a neglected and dependent child.

Stubblefield v. Hampton, Tex.Civ.App., 295 S.W.2d 233; Fox v. Fox, Tex.Civ.App., 210 S.W.2d 622, and cases cited; Gallagher v. Die, Tex.Civ.App., 260 S.W.2d 128.

The judgment of the Trial Court is reversed and judgment is here rendered for appellant for the care, custody and control of her child, Timothy Voigt.

Reversed and rendered.