**In the Interest of Mark William FERGUSON and Randi Elizabeth Ferguson, minor children.**

No. 06–96–00030–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 30, 1996.

Decided July 30, 1996.

Diane M. Fitzpatrick, Longview, for appellant.

John G. Troy, Jr., Longview, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

CORNELIUS, Chief Justice.

The principal question we must decide in this appeal is whether the statutory presumption favoring the appointment of a parent as managing conservator of a child controls over the requirements to modify a custody decree in a proceeding by a noncustodial parent against nonparents to regain custody of the child. We conclude that it does not.

Deana Ferguson (now Wiener) and Eric Ferguson were married in 1988 and had their first child, Mark William, in February of 1989. In October of 1989, the couple separated and Mr. Ferguson filed for divorce. Shortly after Mr. Ferguson filed for divorce, Mrs. Ferguson learned she was pregnant with their second child, Randi Elizabeth, who was born July 2, 1990. Mr. Ferguson's par-

ents, Jerry and Ginger Ferguson, intervened in the divorce and sought custody of the children. An agreed decree of divorce was rendered on October 1, 1990, naming Mrs. Wiener the sole managing conservator and the grandparents as possessory conservators.

After Mrs. Wiener finished high school, she entered Kilgore College and worked part-time. While she was at work or school, her mother took care of the children. Mr. Ferguson entered the military after the divorce and has lived in Germany for the past five years. Mrs. Wiener's mother began having health problems, and in April 1992, she was no longer able to help with the children. Mr. and Mrs. Jerry Ferguson, the paternal grandparents, began taking care of the children while their former daughter-in-law was at school or work. In late 1993, Mrs. Wiener told the grandparents she was relocating to Houston and was taking the children with her. The Fergusons responded with a suit to modify conservatorship. The trial court held a hearing on the motion. The court named the grandparents managing conservators and named Mrs. Wiener possessory conservator.

Shortly before a year passed, Mrs. Wiener filed a motion to modify, seeking to be named managing conservator of the children, now ages five and six. The matter was tried to the court in November 1995. The court denied Mrs. Wiener's motion, even though it found that her circumstances had materially and substantially changed, that she had remarried, was employed, was capable of raising her children, and could provide some stability in the children's lives. The court further found that if the motion to modify had been an original custody proceeding involving the mother and the grandparents, the court would appoint Mrs. Wiener managing conservator pursuant to TEX.FAM.CODE ANN. § 153.131 (Vernon 1996) (the presumption favoring parents as managing conservators). The court found that in August 1994, Mrs. Wiener entered into an agreement that constituted a voluntary relinquishment of primary possession of the children to the grandparents. The court also found that Mrs. Wiener had failed to show that it would be a positive improvement for the managing con-

servatorship to be changed, as is required by TEX.FAM.CODE ANN. § 156.101(a)(2) (Vernon 1996). The court concluded that the parental presumption under Section 153.131 was a factor to consider but did not control over the requirement of Section 156.101(a)(2) of the Family Code that the movant must show that a positive improvement for the children would result from a change of conservatorship.

■ Mrs. Wiener first contends that the trial court erred in failing to apply the parental presumption in this proceeding.

A court may modify an order naming a child's managing conservator if the circumstances of the child, the managing conservator, or possessory conservator have materially and substantially changed since the date of the earlier order's rendition and if the appointment of the new managing conservator would be a positive improvement for the child. TEX.FAM.CODE ANN. § 156.101(a).

The parental presumption is found in TEX. FAM.CODE ANN. § 153.131. That section provides that unless the court finds that appointment of the parent would not be in the child's best interest because the appointment would significantly impair the child's physical health or emotional development, the court shall appoint a parent sole managing conservator. The court is to presume that appointing the parent as sole managing conservator is in the child's best interest. The presumption is rebuttable.

The courts that have considered the exact issue before us have concluded that the requirements of modification as set out in TEX. FAM.CODE ANN. § 156.101 are not subordinated to the parental presumption. As stated by the Supreme Court in *Taylor v. Meek,* 154 Tex. 305, 276 S.W.2d 787 (1955),

> Although this presumption should be considered by the trial judge in weighing the evidence, it cannot be controlling in the face of a final judgment to the contrary, and, whatever effect such a presumption may have in an original custody action, it cannot control a suit to change custody.

In the cases of *Hogge v. Kimbrow,* 631 S.W.2d 603 (Tex.App.—Beaumont 1982, no writ), and *Allen v. Salinas,* 483 S.W.2d 289

(Tex.Civ.App.—El Paso 1972, no writ), the courts made holdings similar to that in *Taylor v. Meek, supra.* In supporting their decisions on this issue, the courts have emphasized the policy that, because a change of custody disrupts the children's living arrangements and the channels of their affection, a change should be made only when the trial court is convinced that the change will be a positive improvement for the children.

Mrs. Wiener argues, however, that the 1987 amendment to the parental presumption strengthened the presumption to the point that it now should control over the modification requirements. The Supreme Court has stated that the amendatory language greatly strengthened the presumption and imposed a heavy burden on a nonparent. *Lewelling v. Lewelling,* 796 S.W.2d 164 (Tex.1990). The opinion in *Lewelling,* however, gives no indication that the amendment of the statutory presumption changed the requirements for a subsequent modification of custody between parents and nonparents. Indeed, in a dissenting opinion one of the justices stated that the amendment only reinforced what has always been the law. *Lewelling v. Lewelling,* 796 S.W.2d at 171 (Gonzales, J., dissenting). We conclude that the amending statute did not change the law as stated by the courts in *Taylor v. Meek, supra; Hogge v. Kimbrow, supra;* and *Allen v. Salinas, supra.*

Mrs. Wiener relies on cases such as *Ham v. Cavette,* 357 S.W.2d 438 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.); *Mecklin v. Herndon,* 325 S.W.2d 824 (Tex. Civ.App.—Texarkana 1959, writ dism'd); *Beasley v. Beasley,* 304 S.W.2d 158 (Tex.Civ. App.—Dallas 1957, writ ref'd n.r.e.); and *Havron v. Havron,* 301 S.W.2d 949 (Tex.Civ. App.—Amarillo 1957, no writ). In those cases, however, the courts relied, at least in part, on showings that a change in custody would operate to improve the child's conditions and would be in the child's best interest.

■ We conclude that, in an original custody proceeding, the court must heavily favor the parents by reason of the rebuttable presumption. If a nonparent rebuts the presumption in the original custody determination, the parents in a subsequent modification

proceeding must meet the requirements for a change of custody set out in TEX.FAM.CODE ANN. § 156.101. If a parent voluntarily relinquishes actual care, control, and possession of the child to a nonparent for a year or more, a portion of which was within ninety days before the date of the suit, the presumption is rebutted. TEX.FAM.CODE ANN. § 153.373 (Vernon 1996).

In this modification action, the trial court did find a material change in the mother's circumstances. The court found that the parental preference was something to consider, but that the preference was not controlling in the face of the previous judgment changing conservatorship to the grandparents. In addition to the presumption, the court also had to consider the stability of the children's home and surroundings in determining whether a change would improve their lot. We find no abuse of discretion.

■ Mrs. Wiener also contends that the trial court erred in failing to find that she had demonstrated that a change in conservatorship would lead to a positive improvement in the children's condition, and that the court's finding that she voluntarily relinquished the children to the paternal grandparents was based on factually insufficient evidence.

■ A determination of custody is within the sound discretion of the trial court when it sits as trier of fact. *Brown v. Brown*, 500 S.W.2d 210, 216 (Tex.Civ.App.—Texarkana 1973, no writ). The trial court's findings of fact or, as here, the failure to find, are binding on us unless they are so contrary to the great preponderance of the evidence as to show a clear abuse of discretion. *See id.* In the absence of such a clear abuse of discretion, we should not substitute our judgment for that of the trial court. *Id.*

■ Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant facts in assessing whether the trial court abused its discretion. *In re Pecht*, 874 S.W.2d 797, 800 (Tex.App.—Texarkana 1994, no writ).

■ While findings of fact in a case tried to the court have the same dignity as a jury's verdict in a jury trial, *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), findings of fact are not conclusive when there is a complete statement of facts on appeal. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] ), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985); *see also* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1045, 1145 (1993).

The trial court here found and concluded that on or before August 1994, Mrs. Wiener entered into an agreement that constituted a voluntary relinquishment of primary possession to the grandparents. The court also concluded that she had not shown it would be a positive improvement to change the managing conservatorship from the grandparents to her. The court did not specify what facts it relied on for that conclusion.

Mrs. Wiener had remarried. Her husband had worked for Coca–Cola for five years and had worked consistently since his job as a paper boy at a young age. The couple was buying a home in the Houston neighborhood where he had grown up, a block away from where the children would go to school. Family and friends testified that the children liked Mr. Wiener and that he enjoyed sports and playing with the children. Mrs. Wiener was described as a warm and loving mother and a good worker who had a steady job. She exercised her visitation rights.

The grandmother said Mrs. Wiener was not "involved" with the children's lives, but also admitted that Mrs. Wiener had not been told about the children's grades and school activities and that the boy was on medication for attention deficit disorder. The grandmother said she did not apprise Mrs. Wiener of these facts because she had not asked the right questions.

Mrs. Wiener testified that her son told her he was embarrassed by the outfits his grandmother made him wear and that the children, then ages five and six, still wore pull-up diapers to bed. She also said she believed the grandparents were too permissive.

When asked to rate the grandmother as a custodial parent on a scale from one to ten, the son's first-grade teacher said the grandmother was a "10." She said that despite the son's attention deficit disorder, he was thriving in his present environment. The daughter's kindergarten teacher said the daughter and the grandmother had a close relationship, that the grandparents were "good parents," and that the little girl was in a good place.

The trial court is in a unique position to view the parties and their witnesses, observe their demeanor and personalities, and feel the forces, powers, and influences, which are difficult to discern and accurately weigh by merely reading the written record. *Brown v. Brown, supra.* We cannot say that the trial court's failure to find that a change in custody would lead to an improvement in the children's condition was so against the great weight and preponderance of the evidence so as to be an abuse of discretion.

As for the court's finding that Mrs. Wiener voluntarily relinquished custody of her children, she contends that the relinquishment was the result of a decree rendered after a contested hearing when she represented herself, and was not voluntary.

We do not have a sufficient record to determine whether the original modification, which is not at issue, was contested. Nevertheless, even if the trial court erred on the question of voluntary relinquishment, the error would be harmless. TEX.R.APP.P. 81(b)(1). Even if Mrs. Wiener did not voluntarily relinquish possession, the trial court's failure to find that a change in conservatorship would lead to an improvement in the children's condition was dispositive of the issue and was not an abuse of discretion.

For the reasons stated, the judgment is affirmed.